**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

The Huntington National Bank

                           Plaintiff,

           v.                     Case No.

Felice Del Priore                   Assigned Judge:

                             Magistrate Judge:

                     Defendant.

## COMPLAINT

NOW COMES Plaintiff The Huntington National Bank ("HNB" or "Plaintiff"), by and through its attorneys Plunkett Cooney PC, and complains of Defendant Felice Del Priore as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action to avoid a fraudulent transfer of the real estate commonly known as 6 South Laflin Street, Unit 708, Chicago, Illinois 60607 made by Anthony Del Priore to Felice Del Priore during a time when Anthony was indebted to Plaintiff.

2.     The action before the Court is brought pursuant to the Illinois Uniform Fraudulent Transfer Act, enacted at 740 ILCS 160/1, *et seq.* (the "Act").

## JURISDICTION AND VENUE

3.     This Court has original subject matter jurisdiction in this lawsuit pursuant to 28 U.S.C. §1332(b), because the matter in controversy is between a national bank based in Ohio and a citizen of Canada, and it exceeds the sum of $75,000 exclusive of interest and costs.

4. This Court has personal jurisdiction over each of the defendants under 735 ILCS 5/2-209(a) & (b).

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (b).

**THE PARTIES**

6. Plaintiff is a national banking association, the main office of which is located in the State of Ohio and the state designated on its organization certificate is Ohio.

7. Felice Del Priore is a Citizen of Canada and is domiciled in St. Catherines, Ontario.

**FACTUAL RELEVANT TO ALL COUNTS**

8. On or about June 27, 2019, Plaintiff extended credit to Midwest Heart & Vascular Associates, Inc. ("Borrower") in the amount of $350,000.00. As evidence of the Loan, Borrower executed a Promissory Note in favor of Plaintiff dated June 27, 2019, in the principal amount of $350,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit A and by express reference made a part hereof.

9. As additional security for the Note, Anthony Del Priore ("Guarantor") executed a certain Commercial Guaranty Agreement ("Guaranty") in favor of Plaintiff guarantying payment of all amounts due on the Note. A true and correct copy of the Guaranty is attached hereto as Exhibit B. The Note is also guarantied by Dominic Tolitano ("Tolitano ") who operated a medical practice with Guarantor.

10. Borrower allowed numerous Events of Default ("Events of Default") to occur under the terms of the Note, including Borrower's failure to pay the monthly principal and interest payments when due. Additionally, Borrower appears to have ceased operating,

and filed a chapter 11 bankruptcy on November 11, 2022 in the Northern District of Illinois Bankruptcy Court which bankruptcy was subsequently dismissed on January 12, 2023.

11.     Borrower and Guarantor failed to pay the Note upon default. As a result, Plaintiff filed a breach of note and breach of guaranty action currently pending in the United States District Court for the Northern District of Illinois as case number 23 cv 220.

12.     Separate from Plaintiff's case, Guarantor has a lawsuit pending against Tolitano related to the medical practice which he filed on March 9, 2021 in Cook County, Illinois. On April 16, 2021, Tolitano filed a countersuit against Guarantor seeking money damages in excess of $379,000.

13.     Four months after Tolitano filed his countersuit, on August 27, 2021, Del Priore quit claim his interest in the real estate commonly known as 6 South Laflin Street, Unit 708, Chicago, Illinois to Felice Del Priore. ("Real Estate"). The Real Estate is legally described as follows:

> UNIT 708S AND P3-26 TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS IN PARK 1500 LOFTS CONDOMINIUM AS DELINEATED AND DEFINED IN THE DECLARATION RECORDED AS DOCUMENT NO 0011105978, AS AMENDED, IN THE WEST 1/2 OF THE NORTHWEST 1/4 OF SECTION 17, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Parcel Identification Numbers: 17-17-101-045-1414 and 17-17-101-045-1507

14.     Felice lives in Ontario, Canada, and appears to be Guarantor's mother.

15.     Guarantor conveyed the Real Estate to Felice via a quit claim deed, in which Guarantor attested that the transaction was exempt from transfer taxes. It appears the claimed exemption was based on 35 ILCS 200/31-45(e)(" Deeds or trust documents where

the actual consideration is less than $100"). A copy of the deed is attached hereto as Exhibit C.

16. There does not appear to be mortgage on the Real Estate.

17. It appears the Real Estate is currently listed for sale with the description "FIRE SALE! NOT A SHORT SALE! SELLER MUST SELL!" See Exhibit D.

## COUNT I

**Avoidance of the Fraudulent Transfer from Guarantor to Felice**

18. Plaintiff restates and realleges the allegations contained in paragraphs 1-17 of the Complaint as if set forth fully herein.

19. Guarantor's transfer of the Real Estate (hereafter "Transfer") was fraudulent under 740 ILCS 160/5(a)(1) because it was made with actual intent to hinder, delay or defraud Huntington and other creditors of Guarantor based on, among other things, the following:

    (i)     The Transfer was made to an insider

    (ii)    The Transfer was concealed from Guarantor's creditors.

    (iii)   At the time of the Transfer, the assets could have been applied to the amount due to Plaintiff and other creditors.

    (iv)   The Transfer was made with the actual intent to hinder, delay, or defraud the Guarantor's creditors, including Plaintiff, pursuant to the Act, 740 ILCS 160/5(a).

    (v)    The Transfer was made without adequate consideration and was fraudulent as to Guarantor's creditors, including Plaintiff, pursuant to the Illinois Uniform Fraudulent Transfers Act 740 ILCS 160.

    (vi)   The Transfer was made at the time Guarantor was indebted to Plaintiff.

(vii)    The Transfer was made without Guarantor receiving reasonably equivalent value in exchange for the Transfer and, at the time the Guarantor made the transfer, upon information and belief, he had incurred debts beyond his ability to pay as they became due, pursuant to the Act, 740 ILCS 160/5(a)(2)(A),(B).

(viii)    The Note remains unpaid, and Guarantor has failed and refused to satisfy his obligations under the Note.

(ix)    Because, upon information and belief, Guarantor did not pay his debts as they became due, he was insolvent or became insolvent shortly after the Transfer and, as a result of the Transfer, was left with insufficient money or property available to satisfy his liabilities.

(x)    Despite the Transfer, Guarantor retained possession, control, and use of the Real Estate.

20.    Plaintiff has been damaged by the Transfer alleged herein as the Note remains unpaid.

21.    Accordingly, the Transfer was fraudulent and therefore avoidable pursuant to 740 ILCS 160/8.

WHEREFORE, The Huntington National Bank, prays for judgment in its favor and against Felice Del Priore, and respectfully requests that the Court enter an order:

(i)    awarding damages against Felice Del Priore in an amount of the value of the Real Estate plus interest, attorney's fees and costs through the date of judgment;

(ii)    avoiding the Transfer to the extent necessary to satisfy Plaintiff's claims against the Guarantor, plus interest, attorney's fees and costs through the date of judgment;

(iii)    seizing and levying the Real Estate;

(iv)    enjoining Felice from transferring, assigning, or disposing of the Real Estate.

(v)    Attaching the Real Estate

(vi)    Granting any other relief to which Plaintiff is entitled

## **COUNT II**

### **Civil Conspiracy to Defraud**

22.    Plaintiff restates and realleges the allegations contained in paragraphs 1-21 of the Complaint as if set forth fully herein.

23.    Felice and Guarantor entered into an agreement to attempt to transfer the Real Estate in order to attempt to place Guarantor's assets out of the reach of his creditor's, including Plaintiff.

24.    In connection with this agreement, Guarantor transferred his interest in the Real Estate to Felice.

25.    Plaintiff has been damaged by this agreement and the Guarantor's Transfer.

WHEREFORE, The Huntington National Bank., prays for judgment in its favor and against Felice Del Priore, in the amount of the value of the assets Guarantor transferred to Felice as well as income earned therefrom, plus attorney fees, court costs and interest, and grant such other relief to which Plaintiff is entitled.

The Huntington National Bank

By: /s/ Matthew L. Hendricksen
Plunkett Cooney PC
221 N. LaSalle Street, Suite 3500
Chicago, Illinois 60601
Phone: (312) 670-6900
Facsimile: (248) 901-4040
mhendricksen@plunkettcooney.com

*Attorneys for Plaintiff*

Open.26611.24712.31047707-1

- 6 -

# EXHIBIT A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $350,000.00 | 06-27-2019 | 07-05-2024 | ▮▮▮▮ | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Midwest Heart & Vascular Associates, Inc.
236 E Irving Park Rd
Wood Dale, IL 60191

**Lender:** THE HUNTINGTON NATIONAL BANK
Chicago Commercial Lending
501 West North Avenue
Melrose Park, IL 60160

---

**Principal Amount: $350,000.00**      **Initial Rate: 7.500%**      **Date of Note: June 27, 2019**

**PROMISE TO PAY.** Midwest Heart & Vascular Associates, Inc. ("Borrower") promises to pay to THE HUNTINGTON NATIONAL BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Fifty Thousand & 00/100 Dollars ($350,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 5, 2024. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning August 5, 2019, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**RATE ADJUSTMENT.** The interest rate will be adjusted every calendar month (the "change period") beginning August 01, 2019 (date of first rate adjustment).

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Wall Street Journal Prime Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each month. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 5.500% per annum. Interest on the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 2.000 percentage points over the Index, resulting in an initial rate of 7.500% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: The Huntington National Bank, GW1W34, 5555 Cleveland Avenue Columbus, OH 43231.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding an additional 3.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

## PROMISSORY NOTE
### (Continued)

Page 2

**CONFESSION OF JUDGMENT.** Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**FINANCIAL STATEMENTS.** Borrower agrees to furnish from time to time on the request of the Lender true and complete financial statements and such other information as the Lender may reasonably require.

**IMPORTANT INFORMATION ABOUT PROCEDURES REQUIRED BY THE USA PATRIOT ACT.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each entity or person who opens an account or establishes a relationship with the Lender.

What this means: When an entity or person opens an account or establishes a relationship with the Lender, the Lender may ask for the name, address, date of birth, and other information that will allow the Lender to identify the entity or person who opens an account or establishes a relationship with the Lender. The Lender may also ask to see identifying documents for the entity or person.

**ADDITIONAL DEFAULT.** In addition to those events described as Events of Default in the Section of this Note captioned DEFAULT, it shall constitute an Event of Default under this Note if Borrower fails to comply with or to perform any term, obligation, covenant or condition contained in any interest rate protection agreement, foreign currency exchange agreement, commodity price protection agreement or other interest or currency exchange rate or commodity price hedging arrangement between Borrower and Lender.

**DEPOSIT ACCOUNT.** Borrower shall maintain primary operating deposit accounts with Lender.

**JURISDICTION.** Borrower hereby submits to the jurisdiction of federal and state courts in the state referenced in the "GOVERNING LAW" paragraph of this Note, and waives any objection to venue with respect to actions brought in such courts.

**BUSINESS PURPOSE.** The loan evidenced by this Note is for commercial or business purposes and is not intended to be, and will not be, used for personal, family, household, or educational purposes.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

MIDWEST HEART & VASCULAR ASSOCIATES, INC.

By: _____
Anthony Del Priore, Secretary of Midwest Heart &
Vascular Associates, Inc.

By: _____
Dominic Tolitano, President of Midwest Heart &
Vascular Associates, Inc.

# EXHIBIT B

# COMMERCIAL GUARANTY

| **Borrower:** | Midwest Heart & Vascular Associates, Inc.<br>236 E Irving Park Rd<br>Wood Dale, IL 60191 | **Lender:** | THE HUNTINGTON NATIONAL BANK<br>Chicago Commercial Lending<br>501 West North Avenue<br>Melrose Park, IL 60160 |
|---|---|---|---|
| **Guarantor:** | Anthony Del Priore<br>1146 W Hubbard St Unit 2<br>Chicago, IL 60642 | | |

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. For this purpose and without limitation, "new Indebtedness" does not include all or part of the Indebtedness that is: incurred by Borrower prior to revocation; incurred under a commitment that became binding before revocation; any renewals, extensions, substitutions, and modifications of the Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty, (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give

## COMMERCIAL GUARANTY
### (Continued)

notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**CONFESSION OF JUDGMENT.** Guarantor hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Guarantor for the unpaid amount of this Guaranty as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Guaranty, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Guarantor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Guaranty have been paid in full. Guarantor hereby waives and releases any and all claims or causes of action which Guarantor might have against any attorney acting under the terms of authority which Guarantor has granted herein arising out of or connected with the confession of judgment hereunder.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions.**

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of

**COMMERCIAL GUARANTY**
**(Continued)**

Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waive Jury.** Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other.

**IMPORTANT INFORMATION ABOUT PROCEDURES REQUIRED BY THE USA PATRIOT ACT.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each entity or person who opens an account or establishes a relationship with the Lender.

What this means: When an entity or person opens an account or establishes a relationship with the Lender, the Lender may ask for the name, address, date of birth, and other information that will allow the Lender to identify the entity or person who opens an account or establishes a relationship with the Lender. The Lender may also ask to see identifying documents for the entity or person.

**Jurisdiction.** Guarantor hereby submits to the jurisdiction of federal and state courts in the state referenced in the "Governing Law" paragraph of this Guaranty, and waives any objection to venue with respect to actions brought in such courts.

**THE FOLLOWING NOTICE IS REQUIRED BY ILLINOIS LAW:** Unless Guarantor provides Lender with evidence of the insurance coverage required by Guarantor's agreement with Lender, Lender may purchase insurance at Guarantor's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Guarantor's interests. The coverage that Lender purchases may not pay any claim that Guarantor makes or any claim that is made against Guarantor in connection with the collateral. Guarantor may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Guarantor has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Guarantor will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Guarantor's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Guarantor may be able to obtain on Guarantor's own.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Midwest Heart & Vascular Associates, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation Anthony Del Priore, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means THE HUNTINGTON NATIONAL BANK, its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JUNE 27, 2019.**

**GUARANTOR:**

X _____
Anthony Del Priore

# EXHIBIT C

# QUIT CLAIM DEED
## ILLINOIS STATUTORY

**MAIL TO:**

KENT ELLIOTT NOVIT
100 NORTH LASALLE ST.
SUITE 1700
CHICAGO, ILLINOIS 60602

**NAME & ADDRESS OF TAXPAYER:**

ANTHONY DEL PRIORE
1146 WEST HUBBARD STREET
UNIT 2W
CHICAGO, ILLINOIS 60642

Doc#. 2125620324 Fee: $98.00
Karen A. Yarbrough
Cook County Clerk
Date: 09/13/2021 02:04 PM Pg: 1 of 3

Dec ID 20210901670434
ST/CO Stamp 1-171-545-872
City Stamp 0-228-908-816

**RECORDER'S STAMP**

THE GRANTOR(S) ANTHONY DEL PRIORE (married to ALEXANDRA DEL PRIORE)
of the CITY of CHICAGO County of COOK State of ILLINOIS for and in
consideration of TEN ($10.00) DOLLARS
and other good and valuable considerations in hand paid,
CONVEY(S) AND QUIT CLAIM(S) to FELICE DEL PRIORE

(GRANTEE'S ADDRESS) 7 VALVANO COURT, ST. CATHARINES, ONTARIO, CANADA L2W 1C2
of the City of _____, County of _____ State of _____
all interest in the following described real estate situated in the County of COOK, in the State of Illinois, to
wit:

UNIT 708S AND P3-26 TOGETHER WITH ITS UNDIVIDIED PERCENTAGE INTEREST
IN THE COMMON ELEMENTS IN PARK 1500 LOFTS CONDOMINIUM AS
DELINEATED AND DEFINED IN THE DECLARATION RECORDED AS DOCUMENT NO.
0011105978, AS AMENDED, IN THE WEST 1/2 OF THE NORTHWEST 1/4 OF SECTION
17, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN,
IN COOK COUNTY, ILLINOIS.

hereby releasing and waiving all rights under any by virtue of the Homestead Exemption Laws of the State of
Illinois.

Permanent Index Number(s): 17-17-101-045-1414 and 17-17-101-045-1507

Property Address: 6 SOUTH LAFLIN STREET, UNIT 708 and UNIT P3-26, CHICAGO, ILLINOIS 60607

Dated this 27th day of AUGUST 2021.

X _____ (Seal)          X _____ (Seal)
(ANTHONY DEL PRIORE)                          (ALEXANDRA DEL PRIORE)

_____ (Seal)          _____ (Seal)

**NOTE: PLEASE TYPE OR PRINT NAME BELOW ALL SIGNATURES**

COUNTRY OF CANADA

~~STATE OF ILLINOIS~~ } ss.
~~COUNTY OF COOK~~ }

I, the undersigned, a Notary Public in and for said ~~County,~~ in the ~~State~~ aforesaid, CERTIFY THAT
Province   Country
ANTHONY DEL PRIORE and ALEXANDRA DEL PRIORE

personally known to me to be the same person whose name are subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that they signed, sealed and delivered the instrument as their free and voluntary act, for the uses and purposes therein set forth, including the release and waiver of the right of homestead.*

Given under my hand and notarial seal, this _27th_ day of _AUGUST_, 2021.

_Tracy J. Middleton Collin_          Notary Public
TRACY J. MIDDLETON
COLLIN

My commission expires on _PERPETUAL_

TRACY JO MIDDLETON COLLIN
Barrister, Solicitor, Notary Public
and Commissioner of Oaths in the Province of Ontario
Canada, B.A., M.A., LL.B.

PROVINCE OF ONTARIO,
~~COUNTY –~~ ~~ILLINOIS TRANSFER STAMP~~

**[SEAL HERE]**

* If grantor is also Grantee you may want to strike Release & Waiver of Homestead Rights.

**NAME AND ADDRESS OF PREPARER:**

KENT ELLIOTT NOVIT
100 NORTH LASALLE STREET
SUITE 1700
CHICAGO, ILLINOIS 60602

**EXEMPT UNDER PROVISIONS OF PARAGRAPH**

_____ E _____ **SECTION 4,**
REAL ESTATE TRANSFER ACT
DATE: _SEPT 9, 2021_
_[signature]_
Signature of Buyer, Seller or Representative

** This conveyance must contain the name and address of the Grantee for tax billing purposes: (55 ILCS 5/3-5020) and name and address of the person preparing the instrument: (55 ILCS 5/3-5022).

QUIT CLAIM DEED
ILLINOIS STATUTORY

FROM

ANTHONY DEL PRIORE and
ALEXANDRA DEL PRIORE

TO

FELICE DEL PRIORE

## GRANTOR/GRANTEE AFFIDAVIT: STATEMENT BY GRANTOR AND GRANTEE
### AS REQUIRED BY §55 ILCS 5/3-5020 (from Ch. 34, par. 3-5020)

### GRANTOR SECTION
The **GRANTOR** or her/his agent, affirms that, to the best of her/his knowledge, the name of the **GRANTEE** shown on the deed or assignment of beneficial interest **(ABI)** in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or another entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

DATED: 9 | 10 , 2021          SIGNATURE: _____

GRANTOR or AGENT

**GRANTOR NOTARY SECTION:** The below section is to be completed by the NOTARY who witnesses the GRANTOR signature.

Subscribed and sworn to before me, Name of Notary Public: _____

By the said (Name of Grantor): KENT NOVIT

On this date of: 9 | 10 , 20 21

NOTARY SIGNATURE: Evelyn Roldan-Caraballo

AFFIX NOTARY STAMP BELOW

EVELYN ROLDAN CARABALLO
Official Seal
Notary Public - State of Illinois
My Commission Expires Sep 24, 2021

### GRANTEE SECTION
The **GRANTEE** or her/his agent affirms and verifies that the name of the **GRANTEE** shown on the deed or assignment of beneficial interest (ABI) in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois or other entity recognized as a person and authorized to do business or acquire and hold title to real estate under the laws of the State of Illinois.

DATED: 9 | 10 , 2021          SIGNATURE: _____

GRANTEE or AGENT

**GRANTEE NOTARY SECTION:** The below section is to be completed by the NOTARY who witnesses the GRANTEE signature.

Subscribed and sworn to before me, Name of Notary Public: _____

By the said (Name of Grantee): KENT NOVIT

On this date of: 9 | 10 , 20 21

NOTARY SIGNATURE: Evelyn Roldan-Caraballo

AFFIX NOTARY STAMP BELOW

EVELYN ROLDAN CARABALLO
Official Seal
Notary Public - State of Illinois
My Commission Expires Sep 24, 2021

### CRIMINAL LIABILITY NOTICE
Pursuant to Section **55 ILCS 5/3-5020(b)(2)**, Any person who knowingly submits a false statement concerning the identity of a **GRANTEE** shall be guilty of a **CLASS C MISDEMEANOR** for the **FIRST OFFENSE**, and of a **CLASS A MISDEMEANOR**, for subsequent offenses.

(Attach to **DEED** or **ABI** to be recorded in Cook County, Illinois if exempt under provisions of the Illinois Real Estate Transfer Act: (35 ILCS 200/Art. 31)

rev. on 10.17.2016

EXHIBIT D

**6 S Laflin St #708**, CHICAGO, IL 60607



**$386,089**
Redfin Estimate

**2**
Beds

**2**
Baths

**—**
Sq Ft

**Is this your home?**

Track this home's value and nearby sales activity

I own 6 S Laflin St #708

**Off Market**
This home last sold for $270,000 on Jun 6, 2010.

Sell your home for more, pay a 1% listing fee when you sell and buy ⊘

Estimated Sale Price

**$367,000 – $437,000**

Schedule selling consultation

It's free, with no obligation — cancel anytime

OR

**Request Free Analysis**

Get a Redfin Sales Advisor's opinion on your home value and the state of the Chicago market.

## About This Home

FIRE SALE! NOT A SHORT SALE! SELLER MUST SELL!

Listed by Lynn Weekley • @properties Christie's International Real Estate
Redfin checked: 4 minutes ago (May 5, 2023 at 3:21pm) • Source: MRED #07465562

Bought with Mark Rotblatt • @properties Christie's International Real Estate

### Home facts

| | |
|---|---|
| Status | Closed Sale |
| Property Type | Condo |
| HOA Dues | $400/month |
| Year Built | 2002 |
| Community | Near West Side |
| MLS# | 07465562 |

### Price insights

| | |
|---|---|
| Redfin Estimate | $386,089 |
| Buyer's Agent Commission | 2.41% |

## Redfin Estimate for 6 S Laflin St #708

Edit home facts to improve accuracy.

Create an Owner Estimate

**$386,089**

Track this estimate

+$116K since sold in 2010
Last updated 05/05/2023 1:24 pm

See estimate history

Redfin Estimate based on recent home sales. ⓘ



